# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff/Respondent, | ) |
| | ) CAUSE NO. 2:15-CV-387-PPS |
| v. | ) |
| | ) ARISING FROM 2:13-CR-135-PPS-APR |
| NATHAN DEMAR HUEY-DINGLE, | ) |
| | ) |
| Defendant/Petitioner. | ) |

## **OPINION AND ORDER**

Nathan Demar Huey-Dingle's seeks to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [DE 60.] Huey-Dingle challenges his sentence on the grounds that he received ineffective assistance of counsel. He presents ten different claims of ineffective counsel, all of which, he says, occurred because his attorney was resigned to accepting a plea agreement in his case, rather than fighting the charges. Huey-Dingle signed a plea agreement that contained an explicit waiver of his right to appeal and seek relief under 28 U.S.C. § 2255. Because his plea was made knowingly and voluntarily and he does not allege facts to show ineffective assistance of counsel in negotiating the waiver, Huey-Dingle's motion is denied.

## **Background**

Huey-Dingle was charged by Superseding Indictment with a Mann Act violation, a Travel Act violation, and Sex Trafficking by Force, Fraud, or Coercion. [DE 29.] The grisly facts that led to his conviction are that Huey-Dingle was taking his girlfriend around the Midwest and prostituting her. On one of the trips from Chicago to

Indianapolis, an argument broke out between two. Huey-Dingle pulled the car over on the side of Interstate 65 near Lafayette and proceeded to beat his girlfriend to death. (There was a second woman in the car who witnessed the gruesome events). Huey-Dingle entered into a plea agreement with the government in which he pled guilty to the three counts. [DE 39 at 3.] In exchange, the government agreed not to file any additional charges against him arising out of the conduct in question,and the State of Indiana agreed to dismiss state charges pending against him for the same conduct. [DE 39 at 4.] By pleading guilty, Huey-Dingle was able to avoid the death penalty charge that he was facing in state court. In the plea agreement before this court, Huey-Dingle stated:

> I declare that I offer my plea of guilty freely and voluntarily and of my own accord, and no promises have been made to me other than those contained in this agreement, nor have I been threatened in any way by anyone to cause me to plead guilty in accordance with this agreement.

[DE 39 at 9.] Huey-Dingle's written plea agreement contained an express waiver of his right to file a § 2255 motion stating:

> I understand that the law gives a convicted person the right to appeal the conviction and the sentence imposed; I also understand that no one can predict the precise sentence that will be imposed and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offense(s) as set forth in this plea agreement. With this understanding and in consideration of the government's entry into this plea agreement, *I*

2

> *expressly waive my right to appeal or to contest my conviction and all components of my sentence, or the manner in which my conviction or my sentence was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to the negotiation of this plea agreement*, including any appeal under 18 U.S.C. § 3742 or any post-conviction proceeding, including but not limited to, a proceeding under 28 U.S.C. § 2255.

[DE 39 at 5 (emphasis added).]

On May 28, 2014, a change of plea hearing occurred at which Huey-Dingle indicated to me that he knowingly and voluntarily waived his rights. [DE 62 at 18-19.] The hearing was conducted in the presence of Huey-Dingle's attorney and fully complied with the requirements of Federal Rule of Criminal Procedure 11. At the hearing, I found Huey-Dingle to be fully competent and capable of entering an informed plea. [DE 62 at 39.] I then accepted the plea agreement that he had entered into with the government and adjudged him guilty. *Id.* At a sentencing hearing on October 17, 2014, I sentenced him to a term of imprisonment of 540 months, as per his plea agreement. [DE 63 16-17.]

Huey-Dingle timely filed a Motion to Vacate, Set Aside**,** or Correct Sentence pursuant to 28 U.S.C. § 2255 making ten claims of ineffective assistance of counsel. Specifically, Huey-Dingle claims his counsel was ineffective in that he allegedly: (1) did not review probable cause for a search warrant; (2) did not interview "potential witnesses for the defense or interview government witnesses;" (3) did not speak with

Huey-Dingle on a regular enough basis to discuss their defense strategy; (4) did not challenge "the government's case of filing for suppression of evidence to prepare for trial;" (5) did not challenge sentencing enhancements; (6) failed to file, or meet with Huey-Dingle about filing, an appeal; (7) committed too many cumulative errors that "prejudiced [Huey-Dingle's] opportunity at a fair result in the court proceedings;" (8) gave "erroneous" advice to "induce" Huey-Dingle to plead guilty; (9) gave erroneous advice "in conjunction with prosecution about giving more time to petitioner about a murder in the state that had nothing to do with his present case;" and (10) performed ineffectively and non-adversarially and such performance exposed Huey-Dingle "to numerous cumulative errors that had a pervasive effect on the entire evidentiary picture" of his case. [DE 60 at 7-9.]

## Discussion

A motion under § 2255 allows a federal prisoner "in custody . . . claiming the right to be released" to attack his sentence on the grounds that it was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Relief under § 2255 is reserved for extraordinary situations. *Prewitt v. United States,* 83 F.3d 812, 816 (7th Cir. 1996).

The appeal waiver in Huey-Dingle's plea agreement, however, limits the arguments eligible for consideration by this Court. In the Seventh Circuit, only two

4

claims under § 2255 are available to an individual who waived the right to appeal his right to bring a collateral attack under § 2255: (1) that the defendant received ineffective counsel with regard to the waiver or plea agreement as a whole and its negotiation, *United States v. Smith*, 759 F.3d 702, 707 (7th Cir. 2014); or (2) that the waiver was not knowingly or voluntarily made. *See Jones v. United States,* 167 F.3d 1142, 1145 (7th Cir. 1999); *United States v. Rhodes*, 330 F.3d 949, 952 (7th Cir. 2003); *Mason v. United States,* 211 F.3d 1065, 1068 (7th Cir. 2000).

To prevail on a claim of ineffective assistance of counsel, a defendant must show that 1) his counsel's performance "fell below an objective standard of reasonableness," and 2) "that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Hinton v. Alabama*, 134 S.Ct. 1081, 1088 (2014); *see also Strickland v. Washington*, 466 U.S. 668, 688-94 (2009). If the defendant cannot establish both of these factors, the claim fails. *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002). In applying this test, the court is "highly deferential to counsel," and there is a "strong presumption that counsel's decisions constitute reasonable litigation strategy." *United States v. Scanga*, 225 F.3d 780, 783-784 (7th Cir. 2000) (internal quotations omitted). Furthermore, not every ineffective assistance of counsel claim can overcome a waiver. *Hurlow v. United States*, 726. F.3d 958, 966 (7th Cir. 2013). The court rejects "broad, unsupported assertions of ineffective counsel, as well as garden variety attacks raised in the guise of a claim of ineffective assistance of counsel." *Id.* (internal quotations and citations omitted).

I have reviewed Huey-Dingle's motion and the descriptions he provided of the grounds under which he seeks relief and have concluded that an evidentiary hearing is not necessary here. Nine of the ten issues Huey-Dingle seeks to raise are precluded by the waiver language of his plea agreement. In raising those issues (grounds 1-7, 9 and 10), he did not explicitly allege that his waiver was not entered into knowingly or voluntarily, nor did he allege that he received ineffective assistance of counsel with respect to his negotiation and acceptance of the agreement.

Ground 8 is the only claim available to Huey-Dingle. In it, he claims that his "counsel [was] ineffective for giving erroneous advise[sic] to induce a guilty plea from petitioner without investigating [the] case." [DE 60 at 8.] In claiming that his lawyer gave him "erroneous advise[sic] to induce a guilty plea," Huey-Dingle fails to provide the court with any specifics about what advice was given, why it was "erroneous," or how it induced him to plead guilty. [DE 60 at 8.] Huey-Dingle's claim of ineffective assistance of counsel with regard to the plea is precisely this type of "broad, unsupported" assertion that the court rejects. Because he offers only such unsupported assertions, Huey-Dingle cannot show that his attorney's conduct fell below the objective standard of reasonableness. His claim, therefore, fails.

Huey-Dingle likewise fails to establish that his plea was involuntary or unknowing as a result of his attorney's alleged deficient performance. In his plea agreement, Huey-Dingle expressly stated that he understood the maximum possible sentences set forth in his plea agreement and that he entered in his "plea of guilty freely

6

and voluntarily and of my own accord, and no promises have been made to me other than those contained in this agreement, nor have I been threatened in any way by anyone to cause me to plead guilty in accordance with this agreement." [DE 39 at 9.] At his change of plea hearing, conducted in the presence of his attorney, Huey-Dingle confirmed that he understood the charges against him, his right to persist in a not guilty plea, and the possible maximum statutory sentence he could receive. [DE 62 at 10-12, 26.] In fact, while under oath, Huey-Dingle agreed that he and his attorney had fully reviewed the plea agreement, which includes the appeal waiver, and that his attorney was able to answer all of the questions that he had about the content of the agreement. [*Id.* at 9.] A defendant's statements at the plea colloquy are presumed to be true and may be considered as evidence of a knowing and voluntary waiver. *See United States v. Chavers*, 515 F.3d 722, 724 (7th Cir. 2008); *United States v. Jemison,* 237 F.3d 911, 917 (7th Cir. 2001). The record establishes that Huey-Dingle entered into the plea agreement knowingly and voluntarily and he fails to present any evidence to the contrary.

The waiver in Huey-Dingle's plea agreement also bars his remaining claims of ineffective assistance of counsel, all of which deal with his attorney's general defense strategy and not the negotiation of the plea agreement. Courts consistently have held that "a voluntary and knowing waiver of an appeal is valid and must be enforced." *United States v. Rhodes,* 330 F.3d 949, 952 (7th Cir. 2003); *see also United States v. Sines*, 303 F.3d 793, 798 (7th Cir. 2002); *United States v. Hare,* 269 F.3d 859, 860 (7th Cir. 2001). Waivers are enforceable "if its terms are clear and unambiguous and the record shows

that the defendant knowingly and voluntarily entered into the agreement." *United States v. Blinn,* 490 F.3d 586, 588 (7th Cir. 2007) (citation omitted). As discussed above, the record is clear that Huey-Dingle entered into the plea agreement knowingly and voluntarily. His additional claims are, therefore, barred.

## CONCLUSION

For the foregoing reasons, Huey-Dingle's motion to vacate, set aside or correct his sentence under § 2255 [DE 60] is **DENIED** and **DISMISSED WITH PREJUDICE**. The clerk shall enter final judgment accordingly.

**SO ORDERED.**

ENTERED: October 14, 2016

s/ Philip P. Simon<br>
PHILIP P. SIMON, CHIEF JUDGE<br>
UNITED STATES DISTRICT COURT